IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 29, 2020

## KAMONIE ECTOR v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 114421PC      Steven Wayne Sword, Judge**
_____

### No. E2019-01414-CCA-R3-PC
_____

The petitioner, Kamonie Ector, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received the effective assistance of counsel prior to and during his guilty plea hearing. After our review of the record, briefs, and applicable law, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Kamonie Ector.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Charme Allen, District Attorney General; and Phil Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### *Facts and Procedural History*

I.      Guilty Plea Hearing

Following a traffic stop on September 30, 2016, the petitioner was indicted for possession with intent to deliver 0.5 grams or more of cocaine in a school zone and felon in possession of a firearm. On March 20, 2018, the petitioner pled guilty to possession with intent to deliver 0.5 grams or more of cocaine and felon in possession of a firearm. The petitioner, a Range II offender, received an effective sentence of twenty years in confinement. However, the terms of the plea agreement allowed him to serve his

sentence at the Range I release eligibility of thirty percent. The facts underlying the plea, as explained by the State, were as follows:

Proof in this case would show that on September 30th, 2016, about 9:40 in the evening, officers stopped a white Chevrolet Cavalier on the I-275 north off-ramp to Baxter Avenue. That's here in Knox County. They—officers had observed [the petitioner] get into that—that vehicle in the passenger seat, and they knew at that time he had prior—or had several outstanding warrants. He was taken into custody.

A search of the vehicle revealed a quantity of crack cocaine, approximately 3.66 grams, packaged in a manner consistent with resale. Also found in the vehicle was a loaded 9-millimeter handgun under the driver seat, close to the rear of that driver seat. The cocaine, or the substance thought to be cocaine, was field-tested, also sent to TBI lab, and it was confirmed to be cocaine.

Proof would further be that as of that date [the petitioner] had been convicted of two offenses involving the use of force, and those would be attempted second-degree murder convicted [on] August 3rd, 2007, in Docket No. 86147, and also on that same date, that same docket number, he was convicted of aggravated robbery.

During the plea colloquy, the petitioner informed the trial court that he understood his rights. He further understood that, by pleading guilty to the charges, the petitioner would be waiving his right to a trial by jury, to confront witnesses against him, and to present witnesses in his defense. The petitioner testified he was satisfied with the representation of trial counsel and had no concerns or complaints about trial counsel's representation. Finally, the petitioner affirmed he was not being forced to plead guilty. The trial court accepted the plea agreement and found the petitioner guilty of possession with intent to deliver 0.5 grams or more of cocaine, a Schedule II controlled substance, and felon in possession of a firearm.

II.     Post-Conviction Hearing

The petitioner subsequently filed a pro se petition for post-conviction relief and, following the appointment of counsel, an amended petition for post-conviction relief, arguing his guilty plea was involuntary due to trial counsel's failure to adequately discuss possible defenses with the petitioner. An evidentiary hearing was held on June 6, 2019, during which the petitioner and trial counsel testified.

- 2 -

The petitioner testified he hired trial counsel to represent him after his case was transferred to criminal court. Trial counsel met with the petitioner at the jail two or three times and stayed for approximately fifteen minutes each visit. Regarding trial strategy, the petitioner testified trial counsel did not discuss any possible defenses or trial strategies with the petitioner. Instead, trial counsel repeatedly told the petitioner that he would be found guilty if his case went to trial. Additionally, the petitioner claimed he and trial counsel never reviewed or discussed the discovery in the petitioner's case.

The petitioner testified he wanted to go to trial because Harnissia Logan, the driver of the vehicle during the traffic stop, made several inconsistent statements and, at one point, claimed ownership of the gun found in the car. However, when the petitioner and trial counsel discussed Ms. Logan's inconsistent statements, trial counsel did not think they would be important because Ms. Logan also alleged the petitioner's family paid her to lie about the gun.

Prior to the petitioner's trial date, trial counsel informed the petitioner that the State was offering to remove the school zone enhancement and accept a plea and sentence of twenty years at thirty percent release eligibility. Because the petitioner was facing a minimum of thirty years at 100 percent service if convicted, trial counsel recommended the petitioner accept the plea offer. The petitioner ultimately decided to accept the offer because he would have the chance to make parole if his sentence was served at thirty percent release eligibility as opposed to 100 percent service.

After the guilty plea hearing, the petitioner contacted trial counsel and requested the discovery in his case. After reviewing the discovery, the petitioner suspected an acquaintance, Chris Teffeteller, who was in the vehicle, told the police where and when to find the petitioner. Additionally, according to the petitioner, the dash cam video of the traffic stop appeared to show the arresting officer, Raiques Crump, bend down and pick up something off the ground prior to finding cocaine in the vehicle. Although Officer Crump had been "chasing [the petitioner] for a couple of months," the petitioner was unsure why either Officer Crump or Mr. Teffeteller would try to set him up. The petitioner testified he would have demanded to go to trial if he had reviewed his discovery prior to accepting the guilty plea.

On cross-examination, the petitioner acknowledged he was not sure how to prove the gun and drugs were not his. In addition, the petitioner admitted he never told trial counsel that he wished to testify at trial and did not give trial counsel the names of witnesses to call on his behalf.

Trial counsel testified he was retained by the petitioner's family to represent the petitioner in criminal court. After receiving discovery from the State, trial counsel gave

the petitioner a copy of the discovery and reviewed it with him. Although trial counsel could not recall whether he showed the petitioner the dash cam video, he testified he would have provided the petitioner a summary of the video if he was unable to bring his computer to the jail. However, trial counsel did not see anything in the video that would suggest Officer Crump planted evidence. Regarding Mr. Teffeteller, trial counsel testified the petitioner did tell him about the possibility that Mr. Teffeteller "snitched him out" to police, and, after researching the issue, trial counsel came to believe this was probably true because the petitioner had an outstanding violation of parole warrant.

At first, trial counsel was "somewhat encouraged" by the fact that Ms. Logan claimed ownership of the gun. However, he later learned she told the State that the petitioner's family paid her to perjure herself at the preliminary hearing. Additionally, Ms. Logan had no criminal record whereas the petitioner had prior convictions involving violence.

Because the petitioner was facing a significant amount of time at 100 percent service if convicted and because trial counsel believed the case would be difficult to win, he encouraged the petitioner to accept the plea offer from the State. Additionally, trial counsel was afraid the trial court would enhance the petitioner's sentence based on the allegations that he or his family had paid Ms. Logan to perjure herself. Trial counsel also testified the petitioner never told him the gun and drugs were not his, and, if the petitioner had told trial counsel this, he would have asked for a continuance in order to hire an investigator.

After its review of the evidence presented, the post-conviction court denied relief, and this timely appeal followed.

### *Analysis*

On appeal, the petitioner argues his guilty plea was the result of ineffective assistance of counsel. Specifically, the petitioner argues trial counsel did not give the petitioner discovery prior to the guilty plea hearing or discuss possible defenses with the petitioner. The petitioner claims that had he received discovery prior to accepting the plea offer, he would have rejected the offer and gone to trial. The State contends the post-conviction court properly denied the petition.

The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues.

- 4 -

*Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is *de novo,* with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations *de novo,* affording a presumption of correctness only to the post-conviction court's findings of fact. *Id.*; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id*. Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.*; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be

considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

A guilty plea must be knowingly, voluntarily, and intelligently entered in order to be valid. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010). The court must determine whether the guilty plea evidences a voluntary and informed decision to pursue a guilty plea in light of the alternative options available to the defendant. *Id.* In the context of a post-conviction challenge to a guilty plea, both prongs of the *Strickland* test must be met. *Garcia v. State*, 425 S.W.3d 248, 256 (Tenn. 2013). Thus, to successfully challenge his guilty plea, the petitioner must show counsel's performance was deficient, and he "must establish a reasonable probability that, but for the errors of his counsel, he would not have entered the plea." *Adkins v. State*, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Garcia*, 425 at 257 (Tenn. 2013).

At the evidentiary hearing, the petitioner testified he did not review discovery with trial counsel prior to accepting the plea offer. However, following the guilty plea hearing, trial counsel sent the petitioner the discovery from the case, and, after reviewing the dash cam video and other discovery, the petitioner came to believe he was set up by Officer Crump and Mr. Teffeteller. The petitioner testified he would have rejected the offer and gone to trial if he had reviewed the discovery, particularly the dash cam video, prior to the guilty plea hearing. Trial counsel testified he reviewed discovery with the petitioner and provided the petitioner with a copy of the paper discovery. Although trial counsel could not specifically recall whether he reviewed the dash cam video with the petitioner, he testified he would have summarized the video and provided the petitioner with a copy of the summary. Additionally, trial counsel did not believe anything in the video suggested Officer Crump planted evidence or that there was enough proof to argue that at trial.

In denying the petition, the post-conviction court made the following findings:

[The petitioner] met with his attorney on multiple occasions and discussed the evidence and potential defenses. Both the court and his attorney advised the [p]etitioner clearly that he had the option of proceeding to trial and that the choice was his alone to make. There is no doubt that he made the decision to accept the offer in order to receive a significantly shorter sentence with a potential release in 6.5 years as opposed to 30 or more.

The court does not find the [p]etitioner credible when he testified that had he seen the cruiser video before the plea he would have gone to trial. [Trial counsel] reviewed the video and found nothing to support a defense of "planted evidence". The court finds this assessment to be reasonable. The

- 6 -

[p]etitioner himself testified that he wanted to avoid the 100% service rate he was facing. This choice to enter the negotiated plea settlement was knowingly and voluntarily made.

Implicit in the post-conviction court's order denying relief is an accreditation of trial counsel's testimony, and nothing in the record preponderates against the post-conviction court's factual findings. *See Tidwell*, 922 S.W.2d at 500. Furthermore, although the petitioner asserts he would have proceeded to trial if he had received the dash cam video prior to the guilty plea hearing, he failed to present the video at the evidentiary hearing. At the conclusion of the hearing, the post-conviction court took the matter under advisement in order to allow the petitioner time to supplement the record with the dash cam video. However, the video is not in the record, and nothing suggests the post-conviction court viewed the video prior to making its ruling. Because the petitioner failed to present the video, neither the post-conviction court nor this Court has the ability to fully assess the petitioner's claim. Therefore, the petitioner cannot establish prejudice. *Black v. State*, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990). The petitioner is not entitled to relief.

### *Conclusion*

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE